IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02340-NRN

DANA LYNN DAVIS LEVAN,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**

**N. REID NEUREITER**
**United States Magistrate Judge**

An Administrative Law Judge ("ALJ") concluded that Plaintiff Dana Lynn Davis Levan "has not been under a disability within the meaning of the Social Security Act [the "Act"] from October 9, 2014, through the date of this decision," i.e., March 20, 2017. (AR[1] 30.) Ms. Levan has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #13.)

**I. Standard of Review**

In Social Security appeals, the Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##11, and 11-1 through 11-10.)

accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility, and it may not substitute its judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Nor may the Court "displace the [ALJ]'s choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Id*. "A finding of '"no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

## II. **Background**

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found Ms. Gonzales has the following severe impairments:

> fibromyalgia; degenerative joint disease, right knee, status-post total knee arthroplasty and status-post revision quad closure/repair; degenerative joint disease, left knee with history of ACL reconstruction; degenerative disc disease, cervical spine; arthritis, right hand; carpal tunnel syndrome, left, status-post release;

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of an impairment listed in the regulations; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

2

migraines; depression; anxiety; alcoholism (20 CFR 404.1520(c) and 416.920(c)).

(AR 32.) The ALJ also found that the "medical record establishes these impairments as severe within the meaning of the Regulations because they cause significant limitations in the claimant's ability to perform basic work activities." (*Id.*)

The ALJ determined that Ms. Levan's additional impairments of osteopenia in the lumbar spine and hepatitis C were non-severe. (AR 33.) The ALJ further noted that Ms. Levan "has sought treatment for a right foot fracture and C. diff colitis," but that the "medical record indicates that these conditions resolved or are expected to resolve within 12 months." (*Id.*) And she found "nothing in the medical record to indicate that these conditions would cause [more] than minimal work-related limitations or prevent substantial gainful activity for 12 months." (*Id.*) Finally, the ALJ found the following to be non-medically determinable impairments because Ms. Levan's medical records did not reflect a diagnosis from an acceptable medical source or by diagnostic evidence: carpal tunnel syndrome, peripheral neuropathy, and obsessive-compulsive disorder. (*Id.*)

At step three, the ALJ concluded Ms. Levan's various impairments did not meet the criteria of any listed impairment[3] (*see* 20 C.F.R. § Pt. 404, Subpart P, App. 1), either singly or in combination. (*Id.*) In evaluating Ms. Levan's mental impairments, she reviewed the criteria in listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor-related

---

[3] Because there are no listing criteria specific to migraines or fibromyalgia, the ALJ considered these conditions under the criteria for impairments in listing 1.00 relating to musculoskeletal impairments, listing 11.00 relating to neurological impairments, listing 12.00 relating to mental disorders, and listing 14.00 relating to immune system disorders.

3

disorders), and specifically "considered whether the 'paragraph B' criteria' are satisfied."[4] (AR 33-34.)

As the ALJ noted, "[t]o satisfy the 'paragraph B' criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of [mental] functioning." (AR 34.) There are four applicable areas of mental functioning:

(1) Understand, remember, or apply information;

(2) Interact with others;

(3) Concentrate, persist, or maintain pace; and

(4) Adapt or manage oneself.

(*Id.*, and listings 12.04, 12.06, and 12.15.) The ALJ further explained that "[a] marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited," and that "[a]n extreme limitation is the inability to

---

[4] The paragraph B criteria are identical for listings 12.04, 12.06, and 12.15. Each of these listings contains three paragraphs, A, B, and C, and a claimant must satisfy the criteria set forth in either A and B, or A and C. To meet the Paragraph C criteria, a claimant must show his or her "mental disorder in this listing category is 'serious and persistent,'" which requires "a medically documented history of the existence of the disorder over a period of at least 2 years," and

> evidence of both: (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); and (2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

The ALJ found that the record did not establish that Ms. Levan satisfied the marginal adjustment requirement because her ability to care for herself and her grandchildren, to navigate public transportation and interact appropriately with her providers, all "demonstrate at least a minimal capacity to adapt to changes." (AR 25.) Ms. Levan does not argue in her opening brief that her alleged mental impairments satisfy paragraph C. Thus, because Ms. Levan cannot satisfy paragraph C, she is required to satisfy the criteria of both paragraph A and paragraph B.

function independently, appropriately or effectively, and on a sustained basis." (AR 34.) The ALJ engaged in a detailed analysis of each of the four areas of mental functioning, taking into consideration the evidence and Ms. Levan's medical records. (*Id.*)

First, the ALJ concluded that, with respect to understanding, remembering, or applying information, Ms. Levan has only a mild limitation. (*Id.*) Although Ms. Levan testified she has difficulty concentrating, the ALJ also considered evidence in Ms. Levan's medical records, including her own self-evaluation, indicating she is able to care for her grandchildren, goes shopping, rides the bus, and regularly attends her doctor's appointments. (*Id.*)

Second, the ALJ similarly concluded Ms. Levan has only a mild limitation in the area of interacting with others. (*Id.*) Again, although Ms. Levan testified she argues with her daughter, in her self-evaluation she noted she cares for her grandchildren, and she reported in her treatment plan report that she gets along with authority figures and has never been fired for having problems with others. (*Id.*) There also was nothing in the record to suggest she has any problems interacting with her medical providers. (*Id.*)

Third, the ALJ found Ms. Levan has a moderate limitation vis-à-vis concentrating, persisting, or maintaining pace. (*Id.*) Ms. Levan testified she has trouble concentrating and with her memory. Consultative examiner Dr. David Forhman opined she had a "marked impairment in her ability to do complex tasks, maintain sustained concentration, and put forth consistent effort based on clinical history," and that she had "significant impairments . . . with concentration" (AR 38, citing Exhibit C7F). However, the ALJ gave this opinion only some weight because "Dr. Fohrman based his opinion on a one-time examination," and Ms. Levan's 49-page mental health/office treatment

5

records, dated November 12, 2012 through October 4, 2016, from SummitStone Health Partners, where her treating physician Dr. Zeljko Ivanovic works, "noted no deficits in concentration," characterized her "cognition []as good," along with her "insight and judgment," and "described generally mild symptoms that improve when she is sober." (AR 37-38, citing Exhibit C9F.) At the hearing, Ms. Levan also "testified clearly regarding jobs and the associated duties that she performed within the last 15 years," indicating she could concentrate and remember details from years past. (AR 34.)

The ALJ also noted that Dr. Mark Berkowitz, who reviewed Ms. Levan's medical record to determine her mental capacity for work, concluded Ms. Levan had only "moderate difficulties in maintaining [] concentration, persistence, or pace." (*Id.* at 39, citing Exhibit C2A at 7, 10-12, and Exhibit C4A[5] at 7, 10-11.) Dr. Berkowitz provided a detailed assessment of both Ms. Levan's understanding and memory limitations, as well as her sustained concentration and persistence limitations. (*Id.*) With respect to the former, Dr. Berkowitz found that Ms. Levan was not significantly limited in her ability to remember locations and work-like procedures, or in her ability to understand and remember very short and simple instructions, and that her ability to understand and remember detailed instructions was only moderately limited. (*Id.*) Concerning the latter, Mr. Berkowitz concluded Ms. Levan's ability to carry out short and simple instructions was not significantly limited, and that she was only moderately impaired in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from

---

[5] The ALJ inadvertently cites to B4A, but it is apparent from the exhibit content that she intended to cite C4A.

psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.[6]

Dr. Berkowitz also commented about Dr. Fohrman's one-time evaluation, stating "it is not appropriate to conclude a major depression severe and cognitive disorder without longitudinal support and knowledge of pre-morbid function[in]g." (AR 113.) And he observed that although Ms. Levan told him that she has been "in therapy forever," that the "source has not responded," i.e., whomever she is seeing for therapy apparently did not provide any medical records upon request. (*Id.*)

Fourth and final, the ALJ found Ms. Levan has only a mild limitation in adapting or managing herself, as reflected by her ability to 'attend to her personal care and prepare basic meals," as well as by the fact "that she cleans obsessively." (AR 35.) The ALJ further observed that "no State psychological consultant concluded that a mental listing is medically equaled." (*Id.*) Because the ALJ found that Ms. Levan's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," she concluded that "the 'paragraph B' criteria are not satisfied"—i.e., Ms. Levan's mental impairments did not meet the requisite listed criteria.

Having concluded that none of Ms. Levan's impairments meet or medically equal the severity of any of the listed regulatory impairments, the ALJ proceeded to determine Ms. Levan's residual functional capacity, or "RFC," as follows:

> The claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except the

---

[6] Dr. Berkowitz also concluded Ms. Levan's medical records contained no evidence of *any limitation* with respect to performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others without being distracted by them, or making simple work-related decisions. (AR 112-13.)

7

> claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She is able to push and pull within the limitations for lifting and carrying. She is able to stand and/or walk 6 hours each in an 8-hour workday. She is unlimited in sitting with normal breaks. She is able to climb ramps and stairs occasionally, but is never to climb ladders, ropes, or scaffolds. She is able to balance and stoop frequently. She is able to reach overhead occasionally. She is able to work around moving mechanical parts frequently. She is able to drive occasionally for work. She is to perform no work at unprotected heights. She is able to understand, remember, and carry our tasks learned in 3-months or less. She is able to tolerate frequent interaction with co-workers, supervisors, and the public. She is able to perform work that involves teamwork frequently.

(AR 35.)

The ALJ based her RFC finding "on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all [Ms. Levan's] medically determinable impairments." (*Id.*) She "considered all [Ms. Levan's] symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR 36.)

At step four, the ALJ concluded Ms. Levan is capable of performing past relevant work as a routing or shipping clerk, noting such work "does not require the performance of work-related activities precluded by" her RFC, "is an unskilled (SVP 2) job generally performed at the light exertional level," and that this conclusion is supported by the vocational expert's testimony. (AR 39-40, 96-97.) As a result, the ALJ concluded Ms. Levan "has not been under a disability, as defined in the Social Security Act, from October 9, 2014, through the date of this decision," and the ALJ did not reach the last step, step five, of the sequential evaluation process. (AR 40.)

## III. <u>Analysis</u>

Ms. Levan argues the ALJ's decision should be reversed because the ALJ erred at step three of the sequential evaluation process by not finding that Ms. Levan's mental health conditions met the criteria of a listed impairment. (Dkt. #15 at 1-2.) She also argues that the "RFC formulated by the ALJ was not based on substantial evidence and in fact, was contradicted by the opinions of the consultative examiner," Dr. Fohrman. (*Id.* at 2.) According to Ms. Levan, because the ALJ's RFC "ignored many of Ms. Levan's impaired abilities," the ALJ improperly concluded "that Ms. Levan could return to prior work and as such was not disabled." (*Id.*)

Among other things, Ms. Levan more specifically asserts the ALJ: (1) failed "to discuss the evidence or the reasons why Ms. Levan's mental health conditions did not satisfy Listings 12.04, 12.06 or 12.15, instead making conclusory statements without citations to objective medical evidence" (*id.* at 4); (2) "did not properly account for the substantial medical evidence in the record," rejecting medical evidence "provided by treating or evaluating providers" (*id.* at 5); and (3) "ignored the functional evaluation performed by the Consultative Examiner," Dr. Fohrman, and made only "one vague reference to [Dr. Fohrman's] opinion." She argues "[t]here is no other discussion of [Dr. Fohrman's] opinion despite the significant evidence clearly stating that Ms. Levan meets the listing," and that Ms. Levan's "treating mental health provider, Summit Stone, is not discussed in any detail either." (*Id.* at 6-7.)

Each of these arguments, however, is refuted by the ALJ's detailed decision. To begin, the ALJ addressed in detail Listings 12.04, 12.06, and 12.15, with numerous citations to the medical evidence provided by all Ms. Levan's medical providers—

9

treating, consultative, and reviewing. The ALJ by no means "ignored" or only made a "vague reference to" Dr. Forhman's functional evaluation. Instead, the ALJ went through his findings in some detail (AR at 38), concluding she would only afford them "some weight" because Dr. Fohrman only saw Ms. Levan once, and because the medical treatment records of her treating physician, Dr. Ivanovic, which span approximately four years, indicated "[o]verall . . . [that] her symptoms are manageable with medication," and that "[w]hen she is sober, her mood and symptoms improve" and "[h]er functioning also improves." (*Id.* at 37-38.)

Ms. Levan also primarily relies on the Tenth Circuit's decisions in *Murdock v. Astrue*, 458 F. App'x 702 (10th Cir. 2012), and *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996), cases with facts substantially different from those presented here. In *Chater*, the Tenth Circuit reversed a decision denying disability benefits because the ALJ "did not discuss the evidence or his reasons for determining that [the claimant] was not disabled at step three," but instead "merely stated a summary conclusion that the claimant's impairments did not meet or equal any Listed Impairment." 79 F.3d at 1009. The ALJ's decision in *Chater* was bereft of specific findings or the ALJ's reasons for accepting or rejecting evidence, and thus was nothing more than a "bare conclusion" that was "beyond meaningful review." *Id.* Similarly, in *Murdock*, "the ALJ did not discuss the evidence or provide any analysis as to why [the claimant's condition] did not meet the Listing" requirements, but instead "merely recited the requirements for that decision," and erred by failing to do so. 458 F. App'x at 703.[7]

---

[7] Ms. Levan's reliance on *Murdock* for the premise that "[i]f there are no findings that 'conclusively negate the possibility that a claimant can met a relevant listing, we must remand to the ALJ for further findings,'" is premature and inapplicable, because this only

In stark contrast, the ALJ here engaged in a detailed evaluation of both the medical evidence, and her reasons for determining that Ms. Levan's condition did not meet or medically equal the paragraph B criteria, and included citations to Ms. Levan's medical records as well as a thorough discussion of the various findings of all her mental health medical providers. Although perhaps some of the ALJ's findings concerning Ms. Levan's medical records and her medical providers are included in the ALJ's RFC analysis, the Tenth Circuit has specifically held that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v. Barhart*, 431 F.3d 729, 733 (10th Cir. 2005).

To the extent Ms. Levan is arguing that the ALJ was required, but failed, to adequately analyze the medical opinions of her various providers, assign them a weight, and explain why the particular weight is appropriate, the Court disagrees.

While it may be true that "[a]n ALJ must evaluate every medical opinion in the record," it also is true that "the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). For example, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(1), (2); 20 C.F.R. §

---

comes in to play *after* a court concludes the ALJ actually made a step three error—which I do not find was made by the ALJ here.

416.927(1), (2); SSR 96–6p, 1996 WL 374180, at *2). No matter the relationship, the ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted).

> The ALJ is to consider the following factors when evaluating medical opinions:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin,* 813 F.3d 1326, 1331–32 (10th Cir. 2016). Although the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion, and the reasons for that weight, neither the regulations nor the Court require a factor-by-factor recitation. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

Here, in addition to discussing the opinions of each of Ms. Levan's medical providers, the ALJ also discussed the weight she accorded most of these opinions, and why. For example, the ALJ specifically noted she "reviewed and considered the consultative examinations performed from Dr. Greene, M.D. and Russell A. Thye, Ph.D. (Exhibits C1F and C2F)," but that because "these examinations were performed in 2012 as part of [Ms. Levan's] previous application, [] they are of limited probative value in determining her current functioning." (AR 39.) In contrast, she gave "some weight" to the opinions of Dr. Fohrman and Dr. Berkowitz. (*Id.* at 38-39.) And, although the ALJ did not specifically address what weight she accorded the opinions of Ms. Levan's treating

12

physician, Dr. Ivanovic, any error in failing to do so is harmless, as she obviously considered and relied on these in reaching her conclusions (*see, e.g.*, AR 37-38), *and* his opinions concerning Ms. Levan's mental impairments are consistent with those of Dr. Berkowitz.

As for Ms. Levan's argument that Dr. Fohrman's opinion "clearly" states or establishes that her "mental health impairments, particularly her depression and anxiety, meet the criteria of Listings 12.04, 12.06 and 12.15," and therefore the ALJ erred by not so finding, I also disagree.

It is undisputed that to satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme limitation, or two marked limitations, in the following four broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves. Dr. Fohrman's opinions do not fall neatly within these areas. He found Ms. Levan "has mild impairment in her capacity to do one or two-step tasks," and a "marked impairment in her ability to due [sic] complex tasks, maintain sustained concentration, and put forth consistent effort based on clinical history." (AR 402.) He concluded she had "significant impairments noted above with concentration and problems with abstract thinking and proverb interpretation." (*Id.*) He also opined that Ms. Levan "appears to have mild impairment in social interactions." (*Id.*)

Ms. Levan argues that "[h]aving found one mental area impaired above the marked level, the examiner's opinion supports a finding that Ms. Levan's depression meets part B of listing 12.04." (Dkt. #15 at 9) (emphasis added.) Ms. Levan does not argue that Dr. Fohrman found any of her mental impairments resulted in an extreme

13

limitation, and it is not entirely clear whether "significant" is synonymous with "extreme." Ms. Levan also does not argue, and again it is not clear, whether Dr. Fohrman found her mental impairments resulted in two marked limitations.

Regardless, however, the ALJ did not accept Dr. Fohrman's restrictive limitations from his January 2015 evaluation because Ms. Levan's treating physician, Dr. Ivanovic, "noted no deficits in [her] concentration," and "no abnormalities in [her] thought process or content," and specifically found her cognition, insight, and judgment to be good. (AR 37.) The ALJ also concluded that "[o]verall, [Ms. Levan's] treatment records"—which span from November 2012 to October 2016 (Dkt. #11-1 at 3, AR 448-496)—"indicate her symptoms are manageable with medication," and that "[w]hen she is sober, her mood and symptoms improve," as does her functioning. (AR 37-38.)

It was within the ALJ's discretion to give more credence to the opinions of Ms. Levan's treating doctor, who saw her more consistently over an approximate four-year period, than those of Dr. Fohrman, a consulting physician who only examined her once, in January 2015, and whose findings are inconsistent with the longitudinal record. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("In determining the weight to be given an opinion, the ALJ must consider the consistency between that opinion and the record as a whole."). Ms. Levan essentially is asking the Court to reweigh the evidence evaluated by the ALJ, give more credence to the opinions of Dr. Fohrman than those of Dr. Ivanovic and the other medical providers at SummitStone, and substitute the Court's judgment for that of the ALJ—which clearly would be improper for the Court to do. *See, e.g.*, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Even if the Court agreed with Ms. Levan that the ALJ should have given more weight to Dr. Fohrman's opinions than those of her other medical providers, this would still would not alter the outcome. "[A] court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by 'relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion.'" *Baca v. Colvin*, No. CV 15-02 SCY, 2016 WL 10587984, at *3 (D.N.M. Mar. 16, 2016) (quoting *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800 (10th Cir. 1991). Indeed, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Here, substantial evidence supported the ALJ's determination that Ms. Levan's mental impairments did not meet or medically equal the criteria in listings 12.04, 12.06, or 12.15, as well as the ALJ's RFC finding. The ALJ relied on relevant medical evidence in the form of opinions by Ms. Levan's treating physician Dr. Iconavic, as well as information contained in the extensive medical records of SummitStone, and she relied to some degree on the opinions of Dr. Fohrman and Dr. Berkowitz. The Court concludes that "a reasonable mind might accept [this evidence] as adequate to support [the ALJ's] conclusion.'" *Baca*, 2016 WL 10587984, at *3.

The ALJ also cited additional grounds for her decision. For example, she relied on the fact that "no State psychological consultant concluded that a mental listing is medically equaled." (AR 35.) Dr. Berkowitz specifically concluded Ms. Levan could not satisfy any of the listings. (AR 109-110.) And the ALJ noted, and was reasonably

persuaded by the fact that, Ms. Levan "stopped working for reasons other than her impairments" (AR 38), a finding that also is relevant to the ALJ's determination. *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990). Specifically, Ms. Levan had been working for a temporary agency, but was not hired back when she took time off to attend a funeral. (*Id.*)

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is AFFIRMED.

Dated this 3rd day of June, 2019.

BY THE COURT:

*N. Reid Neureiter*

N. Reid Neureiter
United States Magistrate Judge